257 S.W.2d 388 (1953)
HYMAN et ux.
v.
STANLEY et ux.
No. 7058.
Springfield Court of Appeals. Missouri.
April 28, 1953.
*389 Max Patten, Jr., Roy Coyne, Joplin, for appellant.
Watson, Richart & Titus, Joplin, for respondent.
McDOWELL, Judge.
This appeal is from a decree of adoption rendered in the Juvenile Division of the Circuit Court of Jasper County. Olin Stanley and Juanita Stanley, husband and wife, filed their petition to adopt Woodrow Hyman, Jr., a minor child, born January 16, 1949.
The petition contains all the essential allegations required by the statute. It alleges that Woodrow Hyman and Lucy Hyman are the parents of the child sought to be adopted and that they willfully neglected to provide proper care and maintenance for said child for more than a year last preceding the filing of the petition.
The evidence is undisputed that the custody of Woodrow Hyman, Jr., was taken over by the Juvenile Division of the Circuit Court as a neglected child and placed with petitioners herein March 17, 1949. All parties were residents of Jasper County. There is no dispute that petitioners are suitable parties to adopt said child.
March 21, 1950, the petition for adoption was filed and, at said time, the child had been in the continuous custody of petitioners by direction of the Juvenile Court for more than one year.
We think the evidence shows that during this entire year appellants furnished no support for the child, except such support as the court, by its order, forced the father to provide.
We think there can be no question that the minor child in question was a neglected child at the time the custody was placed with the court. March 22, 1949, information was filed in the Juvenile Court alleging that Woodrow Hyman, Jr. and others were neglected children, living with a vicious person and that said children suffered from the depravity of their parents or other persons in whose care they were. The Juvenile Court, under this petition, found that Woodrow Hyman, Jr. was a neglected child and this judgment was affirmed by our court, on appeal, State v. Hyman, reported in the 230 S.W.2d 504.
In the trial of the case at bar, the court appointed a guardian ad litem for the minor, had investigation made as to the suitability of petitioners; answer was filed by the guardian ad litem recommending the adoption and report of the investigation was made recommending it.
William Kelley, Probation Officer, testified that on or about March 18, 1949, he was called, by telephone, to Webb City; that there he met Mrs. Hyman, the mother of the child sought to be adopted. She was suffering from injuries inflicted by her husband and asked him to take charge of her children; that he took five of the children on that evening and returned the next day and took charge of Woodrow Hyman, Jr. He stated he made arrangements at the Midwest Hotel in Webb City for the mother, who said at the time, she was afraid of her husband. The witness stated the condition of Woodrow Hyman, Jr., at the time he took custody thereof, was bad; that he had a breaking out, itch or impetigo of a serious nature; his whole body was affected. He said he took the child to his home and, later, by order of *390 the Juvenile Court, placed it in the home of Mrs. Stanley. He stated he investigated this home and found it suitable for the care of the child.
The testimony showed that at the time custody of the child in question was taken by the Juvenile Court, appellants were having family trouble; that the children were being taken out on the streets late at night, dirty and in a much neglected condition; that witnesses who went to the home of appellants found insufficient food for the children. The testimony showed that these children were taken by their mother to the police department and had been appealing to the Red Cross for help for the care of said children; that after the children were turned over to the court she was sent to a hospital in Kansas City.
The evidence shows that appellants' home was completely broken up and they were divorced and the children's care left solely in the hands of the Juvenile Court. These parties were both deaf mutes.
Juanita Stanley testified that Woodrow Hyman, Jr. appeared to be about six weeks old when the court placed the custody of him with her, March 17, 1949. His body was covered with sores, he was dirty, starved and nearly dead. It had not been bathed for days, one ear was almost rotted off and disease had completely eaten into the flesh under one of his arms. The testimony is undisputed that the petitioners had the child treated by at least two doctors and, through careful medical attention, health has been recovered. The medical testimony fully corroborates the serious condition the child was in when custody was taken from appellants; that it was undernourished and diseased and could not have lived under the treatment it was getting by appellants.
The testimony on the part of appellants is that they have remarried; that they have tried to regain their children, yet, just before the trial, there is testimony that the husband was arrested, etc. The testimony is that the court has never seen fit to return these children to the parents because of their condition of life and that, up until the judgment of adoption, the child has been in the custody of the court.
Appellants' first assignment of error is that the statutes of Missouri no where provide for adoption of a minor child where the parents have been deprived of custody by the court.
The right of adoption was unknown to the common law of England. Hockaday v. Lynn, 200 Mo. 456, 98 S.W. 585, 8 L.R. A., N.S., 117; Mo.Law Review, Vol. 12, p. 310.
In Missouri the method and consequences of adoption depends upon statute. Mo.Law Review, Vol. 12, p. 310.
In 1917, effective June 18, 1917, the general assembly of this state repealed all former laws relating to adoption and provided proceedings for such adoption in the Juvenile Division of the Circuit Court. This act, with amendments, constitutes the statutory law of adoptions of Missouri and is designated Chapter 453, Adoptions, Vol. II, RSMo 1949, V.A.M.S.
Our courts have held that the adoption statute must be strictly construed in favor of natural parents' rights in controversies involving termination of the relation of parent and child. Application of Graham, 239 Mo.App. 1036, 199 S.W.2d 68; In re Adams, Mo.App., 248 S.W.2d 63; Robertson v. Cornett, 359 Mo. 1156, 225 S.W.2d 780; In re Wines' Adoption, Mo.App., 239 S.W.2d 101.
Section 453.010 RSMo 1949, V.A.M.S., provides:
"Any person desiring to adopt another person as his child may petition the juvenile division of the circuit court of the county in which the person seeking to adopt resides, or in which the person sought to be adopted may be, for permission to adopt such person as his child.
"If the petitioner has a spouse living and competent to join in the petition, such spouse may join therein, and in such case the adoption shall be by them jointly; provided, however, that if such a spouse does not join the petition the court in its discretion may, after a hearing, order such joinder, and if such order is not complied with may dismiss the petition."
Under this section of the statute there can be no question but what the petitioners *391 had a right to file the petition. They had complied with the statute requiring that the custody of the child be in their possession for nine months. There is no limitation of the statute as to the manner in which custody was placed with the petitioners.
To support their theory of the case, appellants cite Section 453.040 RSMo 1949, V.A.M.S. This section relates to procedure and requires the consent of the parents shall not be required to adoption where the petition alleges, as it does in the case at bar, that the parents have willfully neglected to provide the child with proper care and maintenance. This could be no authority to show that the child could not be adopted where the court had taken custody from the parents and placed it with petitioners.
Appellants cite Application of Graham, supra. This case supports the law as we have stated above that the adoption statutes must be strictly construed in favor of the natural parents' rights involving termination of their relationship of parent and child. It merely follows the statute above cited as to the exceptions of requiring written consent of the parents. It holds specifically that the written consent of the parents is not required where they willfully abandon the child and by their conduct indicating a settled intention to leave it in the care of others.
This case properly declares the law that where the child is abandoned or, as in the case at bar, is willfully neglected, that the custody is a continuing process which may be terminated.
The judgment of the trial court finding Woodrow Hyman, Jr. a neglected child and placing the custody with respondents did not deprive appellants of the custody of their child permanently. Appellants could have regained the custody of this child by showing to the court their ability to properly care for and maintain it. The custody of the court continues until the parental care and support has been resumed by appellants. There is nothing in the judgment that would preclude the repentance and reacquisition of parental rights.
In Application of Graham, supra, the law is stated, 199 S.W.2d on page 74, thus: "* * * `Abandonment continues until parental care and support are resumed, and it does not follow that the purpose to forego all parental duties may not be repented of, and in a proper case all parental rights again acquired'. 2 C.J.S., Adoption of Children, § 21(2), pp. 388, 389. See, also, In re Watson's Adoption, supra. Both the abandonment and the termination thereof are matters for judicial determination."
Thus, under the rulings of the authority cited by appellants, we hold that the petitioners had the right to bring the action for adoption of the child in question where the parents have been deprived of custody thereof provided the willful neglect to provide him with proper care and maintenance by the appellants had not been terminated by such appellants. And the question of whether or not the reacquisition of parental rights had been established to the custody of said child was a judicial question to be decided by the trial court.
Assignment II, by appellants, is an abstract statement of law. Appellants state there can be no verdict of adoption without proof of willful neglect for a period of one year previous to the filing of the petition.
To support this proposition of law, appellants cite Application of Graham, supra. We have decided this point under appellants' assignment of error No. I and have followed the law as stated by the authorities cited by appellants.
We hold, under the evidence in this case, that the Juvenile Division of the Circuit Court of Jasper County deprived appellants of custody of the minor child in question because of the child being a neglected child. That judgment was affirmed by this court on an appeal taken therefrom. The evidence is almost uncontradicted in the case at bar that, at the time the Juvenile Court deprived appellants of custody of the child in question, the parents had willfully neglected to provide him with proper care and maintenance. The custody taken by the court was *392 not a permanent custody and did not permanently deprive the parents thereof, but, the custody did continue in the court until the parental care and support, on the part of the parents, was resumed and whether or not such parental care and support was resumed for reacquisition of their parental rights to the custody of the child was a question for judicial determination by the court.
We hold the evidence in the case at bar was ample to show that the willful neglect and failure to care for support of said child on the part of the parents had not been terminated by appellants and the judgment of the trial court so finding should be affirmed as to this point.
Assignment of error No. III, the last contention made by appellants, is that a judgment without statutory grounds is a nullity.
In the statement, brief and argument of appellants, on page 15, they state:
"Further appellants claim that the judgment entered by the court is not valid for the reason that it does not recite a statutory finding justifying a decree of adoption. The courts have held many "times in this state that a judgment of neglect of a minor child in which there are no statutory grounds stated in the judgment is a nullity, and such a rule would also be true of an adoption. * * *"
To support this contention, appellants cite Ex parte Walbridge, 220 Mo.App. 29, 285 S.W. 167.
This case was passing upon the duty of the Juvenile Court in finding what constituted a neglected child, under RSMo 1919, Sections 2591, 2594, now Chapter 211 RSMo 1949, V.A.M.S., Sections 211.010 to 211.300.
Section 211.010, Par. 2, reads as follows:
"For the purpose of sections 211.010 to 211.300, the words `neglected child' shall mean any child under the age of seventeen years, who is destitute or homeless, or abandoned, or dependent upon the public for support, or who habitually begs or receives alms, is found living in any house of ill-fame, or with any vicious or disreputable person, or who is suffering from the cruelty or depravity of its parents, or other person in whose care it may be; * * *."
The Walbridge case holds, under this section of the statute, that a mere recital in the judgment that it appears to the court from the evidence that a child is neglected is insufficient for the reason that it does not meet the requirements of the statute. That the statute requires that the court shall determine that the child is neglected within the definition as set out therein. That the definition of the words "neglected child" has been defined by the legislature and the jurisdiction of the court is limited expressly to the terms of the statute and that when the court undertakes to supervise the care and custody of a minor child it must set out, in its judgment and findings, the facts required by the statute to constitute a "neglected child".
Appellants also cite State ex rel. Dew v. Trimble, 306 Mo. 657, 269 S.W. 617. This case is cited in the Walbridge case and makes the same holding.
We think that appellants, on page 10 of their brief, practically made their own answer to the question in issue wherein they made the following statement:
"* * * The court in this case distinguished between the adoption and the abandonment of neglected children using the following language, at page 73: (The appellants are referring to Graham, supra.)
"`These and the other sections of the Adoption Code, Chapter 56, Article I, RSMo 1939, Mo.R.S.A. § 9608, et seq. [Section 453.010 et seq. RSMo 1949, V.A. M.S.], must not be confused with the Juvenile Court provision for delinquent or neglected children under Article X of the same chapter, Mo.R.S.A. 9696 et seq. [Section 211.310 et seq. RSMo 1949, V.A.M.S.], applicable to counties under 50,000 inhabitants, and a part of the series of statutes under Chapter 56, enacted in 1917, on the subject of children. Under Sections 9703 and 9704 of Article X of the above chapter [Sections 211.380, 211.390 RSMo 1949, V.A.M.S.], the Juvenile Court can provide for the care, discipline, supervision, protection and suitable custody and control of a neglected *393 child during its conditions of need. The purposes of such provisions are solely the welfare of the child, whereas the Adoption Code involves also the legal and civil rights of the parents and children and their natural status. The two proceedings are radically different in both purposes and effect. * * *'" 199 S.W.2d 73.
Thus, the authority cited by appellants relates to an entirely different subject matter and to a statute which requires the court to find in its judgment the conditions specified in the statutes. In other words, the statute, itself, gives a special definition to the term "neglected child" and the judgment of the court must conform to that definition. These authorities are not in point and do not refer to the requirements of a judgment in adoption. State v. Hyman, Mo.App., 230 S.W.2d 504, 511.
Section 453.080 RSMo 1949, entitled "Hearingdecree" reads:
"If the court, after due hearing, is satisfied that the allegations of the petition are true, that the person sought to be adopted, if a minor, has been in the lawful and actual custody of the petitioner or petitioners for a period of at least nine months prior to the entry of the adoption decree, and that it is fit and proper that such adoption should be made, a decree shall be entered setting forth the facts and ordering that from the date of the decree the person sought to be adopted shall, to all legal intents and purposes, be the child of the petitioner or petitioners, and the court may decree that the name of the person sought to be adopted be changed, according to the prayer of the petition."
We hold that the validity of the judgment of the trial court, in the case at bar, decreeing the adoption of the minor child in question, is determined solely by this section of the statute and that the requirements thereof are entirely different from the recitals necessary in a judgment under the chapter of the statute, to-wit, Chapter 211, RSMo 1949, V.A.M.S., relating to neglected and delinquent children.
The judgment of the court recites, in part:
"* * * a jury was waived and after hearing all the evidence adduced this cause was taken under advisement by the court. The Court being now fully advised of the premises, and the Guardian Ad Litem herein having recommended that said adoption be made, is satisfied and finds that the said petitioners are of good character and of sufficient ability to properly care for, maintain and educate said child and that the welfare of said child would be promoted by sustaining said petition and that it is fit and proper that such adoption be made.
"It is therefore ordered, adjudged and decreed by the Court that the Petition for the adoption of said child be sustained and such adoption, be made, and that from the date of this decree the said child shall to all legal intents and purposes, become and be the child of the said Petitioners, by and with the name of Sammie Olin Stanley according to the prayer of petitioners."
Considering this judgment in the light of the requirements of Section 453.080, above cited, the court finds in its judgment that the allegations of the petition are true and that it be sustained. The petition, itself, states the child has been in the continuous possession of petitioners for more than one year prior to the entry of the adoption decree.
The court finds that petitioners are fit and proper persons. Now the statute provides that if the court finds that the child sought to be adopted has been in the possession of petitioners for a period of at least nine months prior to decree of adoption and that it is fit and proper that such adoption be made that the decree shall be entered ordering that from the date thereof the person sought to be adopted shall be the child of petitioners.
We held in In re Wines' Adoption, supra, that the welfare of the child was paramount over all else and, 239 S.W.2d on page 102 of the opinion, upheld a judgment almost in the exact words of the judgment in question. The evidence in the case at bar fully sustains the allegations of the petition.
*394 We find against appellants on the third assignment of error. We find that the judgment complies with Section 453.080, herein set out.
Judgment affirmed.
VANDEVENTER, P. J., and BLAIR, J., concur.